IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:95-CR-41-D-8

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BARKLEY GARDNER, | ) | |
| | ) | |
| Defendant. | ) | |

On April 11, 2022, Barkley Gardner ("Gardner" or "defendant") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 1180] and submitted a memorandum in support [D.E. 1181]. On April 22, 2022, the United States responded in opposition [D.E. 1186]. On April 29, 2002, Gardner replied [D.E. 1191]. As explained below, the court denies Gardner's motion.

I.

Gardner and his associates operated a large-scale, violent drug distribution enterprise in New York and North Carolina. See Presentence Investigation Report ("PSR") [D.E. 893] ¶¶ 9–45. As part of Gardner's drug trafficking, Gardner was responsible for trafficking at least 3.633 kilograms of cocaine base ("crack"). See id. at ¶ 45. And Gardner was involved in the carjacking and brutal murder of Lateisha Beaman. See id. at ¶¶ 33–36, 45.

On November 12, 1996, a jury found Gardner guilty of racketeering in violation of 18 U.S.C. § 1962(c) (count one), conspiracy to violate the RICO statute in violation of 18 U.S.C. § 1962(d) (count two), conspiracy to distribute and possess with the intent to distribute cocaine and cocaine

base ("crack") in violation of 21 U.S.C. § 846 (count 3), conspiracy to commit murder in violation of 18 U.S.C. § 1959(a)(5) (count 4), murder in aid of racketeering and aiding and abetting in violation of 18 U.S.C. §§ 1959(a)(1) and (2) (count 5), carjacking resulting in death and aiding and abetting in violation of 18 U.S.C. §§ 2119 (3) and (2) (count 6), and use and carry firearms during and relation to a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(i) and (2) (count 7). See [D.E. 525].

On March 11, 1996, the court held Gardner's sentencing hearing. See [D.E. 868]. The court calculated Gardner's offense level to be 43, his criminal history category to be III, and his guideline range on counts 1, 2, 3, 5, 6, and 7 to be life imprisonment and count 4 to be 120 months' imprisonment. See id. at 4–5. After considering the arguments of counsel, the court sentenced Gardner to life imprisonment on counts 1, 2, 3, 5, 6, and 7 and 120 months' imprisonment on count 4, all to run concurrently. See id. at 19–21. Gardner appealed. See [D.E. 553]. The Fourth Circuit affirmed. See United States v. Celestine, 43 F. App'x 586, 589, 595–98 (4th Cir. 2002) (per curiam) (unpublished); [D.E. 656]. Gardner petitioned for writ of certiorari. On December 16, 2002, the Supreme Court denied certiorari. See Celestine v. United States, 123 S. Ct. 706 (2002).

From May 2003 to September 2020, Gardner filed numerous motions and appeals, which were all dismissed or denied. On October 19, 2020, Gardner moved for a sentence reduction under the First Step Act. See [D.E. 1062]. On December 15, 2020, the court granted in part Gardner's motion as to count 3 and reduced the term of imprisonment on count 3 from life imprisonment to 240 months' imprisonment. See [D.E. 1077]. This reduction did not change Gardner's total term of life, and all other aspect of the judgment remained the same. See id. Gardner appealed. See [D.E. 1086]. The Fourth Circuit vacated and remanded for reconsideration in light of United States v. McDonald, 986 F.3d 402 (4th Cir. 2021). See [D.E. 1102]. On May 26, 2021, the court granted

2

in part Gardner's motion for a sentence reduction. See [D.E. 1121]. The court reduced Gardner's terms of imprisonment on counts 1, 2, 6, and 7 to 360 months, kept Gardner's term of imprisonment for count 4 at 120 months, reduced Gardner's term of imprisonment for count 3 to 240 months, and kept Gardner's sentence for count 5 at life. See id. The statutory minimum for count 5 is life. See id.; see also 18 U.S.C. §§ 1959(a)(1), (2). Again, Gardner appealed. See [D.E. 1123]. The Fourth Circuit affirmed, holding that "the district court could not consider a sentence of less than life imprisonment[.]" United States v. Gardner, No. 21-6863, 2022 WL 861818, at *1 (4th Cir. Mar. 23, 2022) (per curiam) (unpublished); [D.E. 1172] 2.

On June 21, 2021, the case was reassigned to the undersigned. On April 11, 2022, Gardner moved for compassionate release under the First Step Act. See [D.E. 1180]. On April 22, 2022, the United States responded in opposition. See [D.E. 1186]. On April 29, 2002, Gardner replied. See [D.E. 1191].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the BOP has determined that the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18

3

U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the United States waives a defense based on section 3582(c)(1)(A)'s timing requirements if the United States does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; McDonald, 986 F.3d at 412; United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

4

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1. "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. at § 1B1.13 cmt. n.2.

Gardner seeks compassionate release pursuant to section 3582(c)(1)(A). Gardner sought administrative relief before filing his motion for compassionate relief. See [D.E. 1181-8] 1–3. Therefore, Gardner has satisfied the administrative exhaustion requirement, which the United States recognizes. See [D.E. 1186] 5.

In seeking compassionate release, Gardner cites his alleged unwarranted sentencing disparities, his rehabilitation efforts, the COVID-19 pandemic, and his history of strokes, hypertension, obesity, history of smoking, and benign lipomatous neoplasm. See [D.E. 1181] 7. As for COVID-19 and Gardner's medical conditions, the "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment

5

of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Gardner notes that the Centers for Disease Control and Prevention has found that individuals who have had a stroke may be at a heightened risk of serious infection from COVID-19. [D.E. 1181] 7. The BOP, however, is treating his medical conditions. See [D.E. 1181-10]; [D.E. 1191-10]. And Gardner is fully vaccinated against COVID-19, thereby reducing his risk of serious infection from COVID-19. See [D.E. 1181-10] 33; United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a

6

finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Gardner from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Accordingly, reducing Gardner's sentence based on COVID-19 and Gardner's medical conditions is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for Gardner's argument about alleged unwarranted sentencing disparities, Gardner compares himself to people who pleaded guilty and cooperated. However, there is nothing unwarranted about a sentencing disparity between a person who accepts responsibility, pleads guilty, and cooperates versus a defendant who denies guilt and is convicted at trial. See United States v. Lopez, 860 F.3d 201, 217–18 (4th Cir. 2017); United States v. Allmendinger, 706 F.3d 330, 343–44 (4th Cir. 2013); United States v. Abu Ali, 528 F.3d 210, 263 (4th Cir. 2008) ("Although [a defendant has] every right to go to trial and claim innocence until proven guilty, . . . [once] proven guilty[, he] cannot avail himself of the benefits typically afforded those who reach plea agreements with the government and accept responsibility for their illegal conduct before going to trial."). Moreover, to the extent that Gardner notes that some judges in other cases have granted compassionate release to other defendants serving life sentences for murder in aid of racketeering, this court is not persuaded that Gardner should receive such relief in light of his horrific criminal behavior, including his role in the murder of Lateisha Beaman. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) (noting the "broad discretion" afforded to district courts under the First Step Act); Celestine, 43 F. App'x at 595 (noting that Gardner helped to hatch the plan to murder Beaman, looked for Beaman's car keys so others could transport Beaman elsewhere to die, and helped to force Beaman back into

7

the car when she tried to escape from her impending death).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Gardner's rehabilitation efforts, history of strokes and smoking, hypertension, obesity, and benign lipomatous neoplasms are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, with respect to the medical conditions, Gardner's vaccinated status diminishes the weight of that assumption. Cf. Broadfield, 5 F.4th at 803. Regardless, the section 3553(a) factors counsel against granting compassionate release. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020).

In deciding whether to grant compassionate release, the court finds that Gardner engaged in serious and horrific criminal behavior. See PSR at ¶¶ 33–36, 45. As discussed, Gardner committed abhorrent violent acts with his drug trafficking associates, including murder. See id. 11–12. As for Gardner's history and characteristics, Garner is 52 years old and committed several infractions while initially in federal prison. See [D.E. 1181] 1–2. Nonetheless, Gardner has not received an infraction in 24 years, has earned his GED in federal prison, and has participated in 1,500 hours of other educational courses in federal prison. See id. Before Gardner engaged in the criminal conduct resulting in his federal convictions, Gardner had been convicted in New York state court of unauthorized use of a motor vehicle, criminal possession of stolen property, criminal sale of controlled substance, and criminal possession of controlled substances (two counts). See PSR ¶¶ 50–51. Garner received lenient sentences for these convictions, which apparently emboldened

8

Gardner to escalate his criminal behavior. Gardner's escalated and horrific criminal behavior shows no respect for the law.

The court must balance Gardner's positive steps while federally incarcerated over the last 24 years with his horrific criminal conduct, his serious criminal history, and the other section 3553(a) factors. For the reasons discussed, there is no unwarranted sentencing disparity between Gardner and his co-defendants. Having considered the entire record, Gardner's arguments, the United States' persuasive response, the section 3553(a) factors, and the need to punish Gardner for his serious criminal behavior, to incapacitate Gardner, to promote respect for the law, to deter others, to protect society, and to impose just punishment for his criminal behavior (including his role in the murder of Lateisha Beaman), the court denies Gardner's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–05; Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); Chambliss, 948 F.3d at 693–94; Martin, 916 F.3d at 398; United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 1180].

SO ORDERED. This 26 day of September, 2022.

JAMES C. DEVER III
United States District Judge

9